IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| Deana Martin, | Civil Action No. 5:19-cv-898-CMC |
| Plaintiff, | |
| vs. | **OPINION AND ORDER** |
| Andrew M. Saul,[1] Commissioner of Social Security Administration, | |
| Defendant. | |

Following the adverse final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB"), Plaintiff filed a complaint on March 25, 2019, seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  ECF No. 1.  The matter was referred to a United States Magistrate Judge for a report and recommendation.  *See* 28 U.S.C. § 636(b)(1)(B) (authorizing the district court to, among other things, direct a magistrate judge to submit a report to the district court with proposed "recommendations for the disposition" of a pending matter); D.S.C. Local Rule 83.VII.02(A) (noting after the briefing schedule is established in social security cases, "the case will be referred to a magistrate judge for either a recommendation or a final order, dependent upon the consent of the parties and the district court").  On April 20, 2020, Magistrate Judge Kaymani D. West issued a report and recommendation ("Report"), recommending the Commissioner's decision be affirmed.  ECF No. 17.

---

[1] Andrew M. Saul was sworn in as Commissioner of Social Security on June 18, 2019, replacing Acting Commissioner, Nancy A. Berryhill.

On May 14, 2020, Plaintiff filed objections to the Report, ECF No. 19, to which the Commissioner filed a reply on May 26, 2020. ECF No. 20. For the reasons stated below, the court adopts the Report and affirms the decision of the Commissioner.

### Standard

### 1) Court's Review of Magistrate Judge's Report and Recommendation

A magistrate judge only makes a recommendation to the court. *Mathews v. Weber,* 423 U.S. 261, 270 (1976). Such recommendation is afforded no "presumptive weight," which necessarily leaves the "authority and the responsibility [of] mak[ing] an informed, final determination" with the court. *Id.* at 271.

Within fourteen days after being served with the magistrate judge's report and recommendation, any party may object to the recommendation.[2] 28 U.S.C. § 636(b)(1). If a timely objection is filed, the court must make a *de novo* determination of those portions of the recommendation to which objection is made. *Id.* After conducting this *de novo* review, the court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge, or recommit the matter to the magistrate judge with instructions. *Id.* In the absence of an objection, the court may accept the recommendation of the magistrate judge provided a review of the record reveals no clear error.[3] *Diamond v. Colonial Life & Acc. Ins. Co.,* 416 F.3d 310, 315 (4th Cir. 2005).

---

[2] A party's objection must be made with "sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *United States v. Midgette,* 478 F.3d 616, 622 (4th Cir 2007).

[3] When a party receives notice of the consequences of failing to comply with the timely objection filing requirement, the failure to file a timely objection results in a waiver of that objection in the
Footnote Continued . . .

2

### 2) Court's Review of Agency Decision

The court is authorized to review the Commissioner's denial of DIB under 42 U.S.C. § 405(g). *Mastro v. Apfel,* 270 F.3d 171, 176 (4th Cir. 2001). Such review neither involves a trial *de novo*, *Vitek v. Finch*, 438 F.2d 1157, 1157 (4th Cir. 1971), nor a *de novo* review of the evidence, *Smith v. Schweiker,* 795 F.2d 343, 345 (4th Cir. 1986). Rather, the court's review is "narrow," *id.*, and is limited to whether the Commissioner's factual findings are supported by substantial evidence and whether the Commissioner applied the correct legal standards. *Walls v. Barnhart,* 296 F.3d 287, 290 (4th Cir. 2002).

"The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *T-Mobile South, LLC v. Roswell,* 135 S. Ct. 808, 815 (2015)). In applying the substantial evidence standard, the "court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id.* (alteration marks in original) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The "evidentiary sufficiency" necessary to meet this standard is "not high." *Id.* Substantial evidence, the Fourth Circuit has said, "consists of more than a mere scintilla of evidence but may be less than a preponderance." *Smith v. Chater,* 99 F.3d 635, 638 (4th Cir. 1996). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek*, 139 S. Ct. at 1154 (quoting *Consolidated Edison Co.*, 305 U.S. at 229).

---

court of appeals. *Diamond,* 416 F.3d at 315–16; *Wells v. Shriners Hosp.,* 109 F.3d 198, 201 (4th Cir. 1997); *Wright v. Collins,* 766 F.2d 841, 845–46 (4th Cir. 1985).

Although considerable deference is afforded to the Commissioner's factfinding, the court does not "mechanically accept[]" his findings. *Flack v. Cohen,* 413 F.2d 278, 279 (4th Cir. 1969). Rather, the "statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Id.* Indeed, "courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek,* 438 F.2d at 1157-58.

Along a similar vein, to meaningfully perform substantial evidence review, the record must set forth the basis for the Commissioner's decision. *Radford v. Colvin,* 734 F.3d 288, 295 (4th Cir. 2013). The Commissioner's decision "should include a discussion of which evidence [he] found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Id.*; *see also* 42 U.S.C. § 405(b)(1) (noting the Commissioner's decision must "contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based"). Put another way, the Commissioner's decision must identify the evidence that supports his conclusion and "build an accurate and logical bridge from [that] evidence to his conclusion." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). There is, however, no hard and fast rule the Commissioner must specifically refer to every piece of evidence in the record in his decision. *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014).

## **Background**

The case currently before the court represents Plaintiff's second attempt to obtain DIB. Her first application was filed in July 2012 and alleged the severe impairments of affective disorder

4

and personality disorder. R. at 21, 135-37.[4] In a September 12, 2014 decision, Administrative

Law Judge Jerry W. Peace ("ALJ Peace") denied Plaintiff's DIB claim on the basis Plaintiff was

not disabled between the alleged onset date of October 1, 2011 and the date of his decision. R. at

135.

On May 6, 2015, Plaintiff filed the current application for DIB, alleging disability

beginning October 1, 2012 because of anxiety, bipolar disorder, borderline personality disorder, a

sleep disorder, and depression. R. at 240-41, 279. Plaintiff's application was denied initially, R.

at 113, and upon reconsideration, R. at 130. Following Plaintiff's request, R. at 178-79, a hearing

was held before Administrative Law Judge James M. Martin ("ALJ Martin") on October 13, 2017.

R. at 43-92. At the hearing, Plaintiff, as well as Vocational Expert Robert E. Branham ("VE

Branham"), testified. R. at 53-91. In a January 19, 2018 decision, ALJ Martin denied Plaintiff's

claim for DIB. R. at 18-35. Plaintiff requested review by the Appeals Council, R. at 232, which

issued a "Notice of Appeals Council Action" ("Action Notice") on November 23, 2018. R. at 234.

In the Action Notice, the Appeals Council granted Plaintiff's request for review, reviewed

ALJ Martin's decision, and determined it was not supported by substantial evidence because ALJ

Martin erred when he concluded Plaintiff's date of last insured was September 30, 2016, instead

of June 30, 2018. R. at 234-35. The Appeals Council proposed issuing a decision finding Plaintiff

was not disabled from October 1, 2012 (Plaintiff's onset date) through January 19, 2018 (the date

of ALJ Martin's decision). R. at 235. The Appeals Council noted it intended to adopt the

remainder of ALJ Martin's decision, but permitted Plaintiff to submit additional evidence to, or

---

[4] Citations to the Administrative Record are denoted by "R."

request an appearance before, the Appeals Council. R. at 237. Plaintiff neither submitted additional evidence to, nor requested an appearance before, the Appeals Council. R. at 4.

On February 15, 2019, the Appeals Council issued a decision finding Plaintiff was not disabled and therefore not entitled to DIB. R. at 4-8. In its decision, the Appeals Council adopted all of ALJ Martin's factual findings and conclusions of law, except his finding and conclusion concerning Plaintiff's last insured date. R. at 4-7.

Plaintiff filed the instant complaint seeking review of the decision of the Appeals Council, ECF No. 1, such decision being the final decision of the Commissioner. *See Sims v. Apfel,* 530 U.S. 103, 106-07 (2000) (noting the "Social Security regulations provide that, if the Appeals Council grants review of a claim, then the decision that the Council issues is the Commissioner's final decision"); 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court, or the decision is revised.").

### Discussion

In the Report, the Magistrate Judge recommends the court affirm the Commissioner's decision finding Plaintiff was not disabled on the basis such decision is supported by substantial evidence. ECF No. 17 at 15-24. Plaintiff objects to the Report, arguing the Commissioner's decision improperly assessed Plaintiff's residual functional capacity ("RFC"). ECF No. 19 at 1-4. This objection is premised on the claim the Commissioner failed to give proper weight to the opinions of Plaintiff's treating physician, Dr. Shane Sherbondy ("Dr. Sherbondy"). *Id.* In his reply, the Commissioner argues his final decision denying Plaintiff DIB should be affirmed for the reasons outlined in his brief before the Magistrate Judge and for the reasons set forth in the Report.

ECF No. 20 at 1-2. Before the Magistrate Judge, the Commissioner argued, and the Magistrate Judge ultimately agreed, ALJ Martin properly considered the opinions of Dr. Sherbondy and, therefore, substantial evidence supports ALJ Martin's decision to deny Plaintiff DIB. ECF No. 12 at 12-14.

### 1) DIB Eligibility

To be eligible for DIB under the Social Security Act ("SSA"), a claimant must meet four requirements. 42 U.S.C. § 423(a)(1)(A)-(B), (D)-(E). The claimant must show she: (1) is insured for such benefits; (2) has not attained retirement age; (3) has filed an application for benefits; and (4) is under a disability. *Id.* The parties agree Plaintiff has met the first three requirements; only the fourth, whether Plaintiff is disabled, is in dispute.

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[5] *Id.* § 423(d)(1)(A).

In determining whether a claimant is disabled, the Commissioner uses a five-step, sequential evaluation process. 20 C.F.R. § 404.1520(a)(4)(i)–(v). At Step 1, the Commissioner considers whether the claimant is engaging in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). If the claimant is engaged in substantial gainful activity, the inquiry ceases and the claimant is

---

[5] Under the SSA Regulations, substantial gainful activity is "work activity that is both substantial and gainful." 20 C.F.R. § 404.1572. "Substantial work activity is work activity that involves doing significant physical or mental activities." *Id.* § 404.1572(a). "Gainful work activity is work activity that you do for pay or profit." *Id.* § 404.1572(b).

deemed not disabled. *Id.* If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to Step 2 and considers the medical severity of the claimant's impairments. *Id.* § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments of sufficient duration, there is no further inquiry and the claimant is deemed not disabled.[6] *Id.* If the claimant does have a severe impairment or combination of impairments of sufficient duration, the Commissioner proceeds to Step 3 and determines whether that impairment or combination of impairments meets or equals one of the impairments listed in 20 C.F.R. § 404, Appendix 1.[7] *Id.* § 404.1520(a)(4)(iii). If the answer at Step 3 is yes, the claimant is disabled and further inquiry ceases. *Id.* If the answer at Step 3 is no, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to Step 4.[8] *Id.* § 404.1520(a)(4). At Step 4, the Commissioner determines whether the claimant can perform her

---

[6] Under the SSA Regulations, a severe impairment is "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). To meet the durational requirement, the impairment must last or be expected to last a continuous period of at least twelve months. *Id.* § 404.1509.

[7] The SSA Regulations include an extensive list of impairments ("Listed Impairments") which are considered disabling without the need to assess whether there are any jobs a claimant could perform. The Listed Impairments found at 20 C.F.R. part 404, Appendix 1, are considered severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525(a). To meet or equal one of the Listed Impairments, the claimant must establish her impairments match several specific criteria, *id.* § 404.1525(c)-(e), or be "at least equal in severity and duration to [those] criteria of any listed impairment," *id.* § 404.1526(a).

[8] RFC is "the most the claimant 'can still do despite' physical and mental limitations that affect her ability to work." *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015) (quoting 20 C.F.R. § 416.945(a)(1)); 20 C.F.R. § 404.1545(a)(1) (noting RFC is "the most you can still do despite your limitations'"). In assessing the claimant's RFC, the Commissioner considers "all the relevant evidence in [the] case record," 20 C.F.R. § 404.1545(a)(1), and "all of the claimant's medically determinable impairments," *id.* § 404.1545(a)(2).

8

past relevant work ("PRW") in light of her RFC.[9]  *Id.* § 404.1520 (a)(4)(iv).  If the claimant can perform her PRW, the claimant is deemed not disabled and the inquiry ends.  *Id.*  If the claimant cannot perform her PRW, the Commissioner at Step 5 determines whether she can perform other work found in the national economy commensurate with her age, education, experience, and RFC. *Id.* § 404.1520(a)(4)(v).

The claimant bears the burden of proof through the first four steps of the sequential evaluation process.  *Lewis v. Berryhill,* 858 F.3d 858, 861 (4th Cir. 2017).  If claimant successfully clears these four evidentiary hurdles, the burden shifts to the Commissioner at Step 5 to prove "the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." *Id.* at 862 (quoting *Mascio*, 780 F.3d at 635).  At this final step, the Commissioner usually offers "evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." *Id.* (quoting *Mascio*, 780 F.3d at 635).  If the Commissioner meets his burden, the claimant is found not disabled and the application for benefits is denied.  *Id.*

### 2) Appeals Council Decision

In applying the five-step sequential evaluation process, the Appeals Council adopted all of ALJ Martin's findings of fact and conclusions of law, except his finding Plaintiff's last insured date was September 30, 2016.  R. 4-7.  At Step 1, ALJ Martin found Plaintiff had not engaged in substantial gainful activity since October 1, 2012—the alleged onset date.  R. at 24.  At Step 2,

---

[9] PWR is "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it."  20 C.F.R. § 404.1560(b)(1).

9

ALJ Martin determined Plaintiff's history of bipolar disorder, attention deficit hyperactivity disorder (ADHD), and borderline personality disorder were severe impairments of sufficient duration. *Id.* However, at Step 3, ALJ Martin found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed Impairments in 20 C.F.R. Part 404, Appendix 1. R. at 25.

Prior to moving to Step 4, ALJ Martin found Plaintiff retained the RFC to perform a full range of work at all exertional levels but with the following exertional limitations:

> [Claimant] could frequently climb ladders, ropes, or scaffolds; frequently work at unprotected heights and around moving mechanical parts; sustain concentration, persistence, and pace sufficient to perform simple, routine, and repetitive tasks, but not at a production rate pace; her use of judgment was limited to simple work-related decisions; she could occasionally interact with supervisors and coworkers; never interact with the public; and was limited to tolerating few changes in a routine work setting defined as few, if any workplace changes.

R. at 28. In making his RFC findings, ALJ Martin considered the voluminous record, including: (1) Plaintiff's testimony concerning her symptoms, mental impairments, work history, and daily activities; (2) her medical records; (3) a third-party statement from Plaintiff's coworker; (4) the medical opinion evidence; and (5) ALJ Peace's decision.[10] R. at 28-34. He concluded his assessment of the record evidence on Plaintiff's RFC by noting Plaintiff's symptoms of bipolar

---

[10] A claimant's second or successive application for disability benefits is treated "as a claim apart from those earlier filed, at least to the extent that the most recent application alleges a previously unadjudicated period of disability." *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 476 (4th Cir. 1999). Consequently, "principles of claim preclusion (historically referred to as *res judicata*) do not apply." *Id.* A finding in a prior adjudication does, however, carry persuasive weight. *Id.* at 477-78. As interpreted by the Social Security Administration in AR 00-1(4), *Albright* requires an adjudicator to "consider such a prior finding as evidence and give it appropriate weight in light of all relevant facts and circumstances," including: (1) whether the facts supporting the finding are subject to change; (2) the likelihood of such change in light of the passage of time; and (3) the existence of new evidence that provides the basis for a different finding. AR 00-1(4), 2000 WL 43774, at *1 (Jan. 12, 2000).

disorder, ADHD, and personality disorder were accounted for in the limitations set forth in her RFC. R. at 34. At Step 4, relying on VE Branham's testimony the demands of Plaintiff's PRW exceeded her RFC, ALJ Martin found Plaintiff could not perform her PRW as a daycare worker or telemarketer. R. at 34.

Finally, at Step 5, again relying on the testimony of VE Branham, ALJ Martin found, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy she could perform, namely, that of laundry worker, dishwasher, and industrial janitor. R. at 34-35. In light of his findings at Step 5, ALJ Martin found Plaintiff was not under any disability during the relevant timeframe. R. at 35.

### 3) ALJ Martin's Assessment of Dr. Sherbondy's Medical Opinions

Plaintiff argues the reasons offered by ALJ Martin for according varying degrees of weight to Dr. Sherbondy's opinions are not supported by substantial evidence. ECF No. 11 at 15-17. Succinctly put, through these opinions, Dr. Sherbondy, Plaintiff's treating psychiatrist, opined Plaintiff's medical condition rendered her incapable of handling ordinary work stressors in that Plaintiff "would tend to leave [a] job or [get] fired at the first encounter with a work stressor." R. at 771. According to Plaintiff, this opinion assessing Plaintiff's medical condition required a finding she was unable to work and, therefore, disabled. ECF No. 11 at 13-15. In reply, the Commissioner argues substantial evidence supports ALJ Martin's assessment of Dr. Sherbondy's opinions. ECF 12 at 12-14.

#### a) ALJ Martin's Decision

In his decision, ALJ Martin addressed each of the three opinions rendered by Dr. Sherbondy. The first opinion, in May 2014, was set forth in a letter addressed "To Whom It May

Concern" and stated its substance in just two sentences: "[Plaintiff] has been under my care since July 2007.  Due to [Plaintiff's] medical condition she is unable to work and hold down a job."  R. at 348.  ALJ Martin gave this opinion little weight because the "issue of disability is reserved to the Commissioner, and Dr. Sherbondy lacks SSA program knowledge."[11]  R. at 32.

The second opinion, in June 2015, was set forth in a questionnaire from the South Carolina Vocational Rehabilitation Department assessing Plaintiff's then-current level of functioning.  R. at 414-15.  Dr. Sherbondy noted he first saw Plaintiff on July 9, 2007 and last saw her on June 3, 2015.  R. at 414.  Plaintiff was seen monthly to quarterly for medication management.  *Id.* Plaintiff's current diagnosis was bi-polar disorder, ADHD, and borderline personality disorder, and her medications included Topiramate, Xanax, Latuda, and Adderall.  *Id.*  In assessing Plaintiff's current mental health status, Dr. Sherbondy noted Plaintiff: (1) maintained appropriate grooming/hygiene and affect; (2) was oriented to time, person, place, and situation; (3) had an euthymic mood and a normal thought process; (4) had no perceptual distortions; (5) had average cognitive ability; and (6) had good attention, concentration, and memory.  R. at 415.  Regarding Plaintiff's mental impairments, Dr. Sherbondy indicated Plaintiff had an adequate ability to complete basic activities of daily living and an adequate ability to complete simple, routine tasks. *Id.*  He further indicated Plaintiff had a poor ability to relate to others and a poor ability to complete complex tasks.  *Id.*  Explaining his poor ratings, Dr. Sherbondy noted Plaintiff was "easily overwhelmed by psychosocial stressors."  *Id.*  Finally, Dr. Sherbondy indicated Plaintiff was capable of managing her own funds.  *Id.*

---

[11] Notably, there is no evidence in the record shedding light on Dr. Sherbondy's knowledge of the SSA or the SSA Regulations.

Relying on the record evidence, which included the evidence summarized in ALJ Peace's decision, ALJ Martin gave Dr. Sherbondy's June 2015 questionnaire opinion significant weight, noting the opinion was consistent with Plaintiff's RFC. R. at 33. In particular, ALJ Martin noted the opinion

> was consistent with the claimant's limitation to sustain concentration, persistence, and pace sufficient to perform simple, routine, and repetitive tasks, but not at a production rate pace; simple work-related decisions for the use of judgment; occasional interaction with supervisors and coworkers; no interaction with the public; and few, if any, workplace changes.

*Id.* Regarding Dr. Sherbondy's finding Plaintiff had a poor ability to relate to others, ALJ Martin found this observation was vague and inconsistent with the record evidence demonstrating Plaintiff could occasionally interact with coworkers and supervisors. *Id.*

The final opinion of Dr. Sherbondy was set forth in the form of two identical opinion letters written by him in July and August 2017 to explain his May 2014 opinion that Plaintiff was unable to work and hold down a job. R. at 770, 771. Dr. Sherbondy explained because he usually only sees Plaintiff for medicine checks and not for therapy, he does not take extensive notes about how she presents. R. at 771. Regardless, Dr. Sherbondy was familiar with how Plaintiff presents since he had treated her for so many years. *Id.* Dr. Sherbondy indicated Plaintiff presents "as coherent but with crying spells" and "well overall." *Id.* Because Plaintiff presents well, she is able to obtain a job easily but loses them because she "handles stressors poorly" and "decompensates easily." *Id.* According to Dr. Sherbondy, Plaintiff has "constant psychosocial stressors, and her personality disorder contributes to [these stressors]." *Id.* After detailing some past incidences in 2015 and 2016, Dr. Sherbondy concluded: "Based on my experience with her, [Plaintiff] would not be able

to tolerate ordinary work stressors.  She would tend to leave the job or got fired at the first

encounter with a work stressor."  *Id.*

ALJ Martin directed partial weight to this final opinion of Dr. Sherbondy.  According to

ALJ Martin, Dr. Sherbondy's opinion that Plaintiff would not be able to tolerate ordinary work

stressors was "not consistent with the record as a whole based on the evidence noted [in the

paragraph] above under the prior decision."  R. at 33.

### b) Opinion of Treating Physicians Generally

"Medical opinions" typically are statements from physicians or acceptable medical sources

that "reflect judgments about the nature and severity of [a claimant's] impairment(s), including

[her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her]

physical or mental restrictions."  20 C.F.R. § 404.1527(a)(1).  The amount of weight accorded to

opinions is well-settled.[12]  Generally, the Commissioner will give more weight to the opinion of a

treating physician (or other acceptable treating source) who has examined the claimant than to a

non-examining physician.  *Id.* § 404.1527(c)(1).  This allocation of weight makes sense for at least

two reasons.  First, treating physicians

> are likely to be the medical professionals most able to provide a detailed,
> longitudinal picture of [the claimant's] medical impairment(s) and may bring a
> unique perspective to the medical evidence that cannot be obtained from the
> objective medical findings alone or from reports of individual examinations, such
> as consultative examinations or brief hospitalizations.

---

[12] Plaintiff filed her application for DIB in May 2015.  Since then, the Social Security
Administration has adopted new regulations about the weight afforded to treating physicians'
opinions, but those regulations only apply to claims filed after March 27, 2017.  *See* 20 C.F.R. §
404.1520c (stating "[f]or claims filed before March 27, 2017, the rules in § 404.1527 apply");
*see also* 82 Fed. Reg. 15,263 (stating the rescissions of SSR 96-2p, 96-5p, and 06-3p were
effective for "claims filed on or after March 27, 2017").

*Id.* § 404.1527(c)(2). Second, the opinion of a treating physician often "reflects a judgment based on continuing observation" for, in some cases, many years. *Campbell v. Bowen*, 800 F.2d 1247, 1250 (4th Cir. 1986).

As a result, as long as the medical opinion of the claimant's treating physician is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," such opinion must be given "controlling weight." 20 C.F.R. § 404.1527(c)(2). "By negative implication, if a [treating] physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996).

An analysis of a treating physician's medical opinion is, therefore, sequential. The Commissioner must first consider whether the opinion is "'well-supported' by 'medically acceptable' clinical and laboratory diagnostic techniques."[13] SSR 96–2p, 1996 WL 374188, at *2. If the answer to this question is no, then the inquiry at this stage is complete. *Id.* If the Commissioner finds the opinion is well-supported, he must then confirm the opinion is consistent with other substantial evidence in the record. *Id.* In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight. *Id.* SSR 96–2p contemplates

---

[13] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass v. Chater*, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

the Commissioner will make a finding as to whether a treating physician's opinion is entitled to controlling weight. *Id.*

It follows the Commissioner is not required to accept a treating physician's medical opinion at all, much less do so wholesale. The Commissioner must, however, provide sufficient explanation of his final determination to provide a reviewing court with the benefit of the factual basis underlying the ultimate finding of disability. *Radford,* 734 F.3d at 295. To that end, the Commissioner must set forth the reasons for crediting or discrediting relevant or pertinent medical evidence. *Id.* (noting the Commissioner's decision "should include a discussion of which evidence [he] found credible and why"); *Hines v. Barnhart*, 453 F.3d 559, 566 (4th Cir. 2006) ("The deference accorded an ALJ's findings of fact does not mean that we credit even those findings contradicted by undisputed evidence."). Although the Commissioner may properly accept some parts of the medical evidence and reject other parts, he must consider all of the evidence and give some reason for discounting the evidence he rejects.[14] *Cf. Lewis*, 858 F.3d at 869 ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry pick facts that support a finding of nondisability while ignoring evidence that points to a disability finding.") (quoting *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)).

Moreover, when the medical opinion of a treating physician is not given controlling weight, the Commissioner must consider certain factors in determining the weight to give such opinion, including the examining relationship, the length of treatment, the frequency of examination, the

---

[14] Thorough findings by the Commissioner also instill confidence and transparency in the benefits disposition process by letting claimants "understand the disposition of their cases." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999).

16

nature and extent of the treatment relationship, supportability, consistency of the opinion with the record, specialization, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2)-(6). One example of an "other factor[]" is "the amount of understanding of [the Social Security Administration's] disability programs and their evidentiary requirements that a medical source has, regardless of the source of that understanding . . . ." 20 C.F.R. § 404.1527(c)(6).

Notably, not every physician's opinion is a "medical opinion" under 20 C.F.R. § 404.1527(a)(1). For example, a treating physician's opinion an applicant is "disabled" or "unable to work" is not an opinion that must be given controlling weight or special significance. *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005); *Morgan v. Barnhart*, 142 F. App'x. 716, 722-23 (4th Cir. 2005); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Adorno v. Shalala*, 40 F.3d 43, 47-48 (3d Cir. 1994); *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994); *see also* SSR 96-5p, 1996 WL 374183, at *2 ("However, treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance."). Nevertheless, a treating physician's opinion on an issue reserved to the Commissioner "must never be ignored." SSR 96-5p, 1996 WL 374183, at *3. The Commissioner "must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record" by applying factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6).[15] *Id.*

---

[15] The court notes 20 C.F.R. § 404.1527 was amended in 2012 with the subsection formerly labeled as § 404.1527(d) referenced in SSR 96-5p being renumbered as § 404.1527(c), but without any substantive change. *See How We Collect and Consider Evidence of Disability*, 77 Fed. Reg. 10,651, 10,656 (Feb. 23, 2012) (codified at 20 C.F.R. pt. 404).

*c) Analysis*

<u>i) May 2014 Opinion</u>

ALJ Martin gave Dr. Sherbondy's May 2014 opinion little weight because the "issue of disability is reserved to the Commissioner, and Dr. Sherbondy lacks SSA program knowledge." R. at 32. In response to Plaintiff's argument ALJ Martin improperly weighed Dr. Sherbondy's May 2014 opinion, the Magistrate Judge concluded ALJ Martin properly accorded the opinion little weight because an opinion a claimant is disabled is entitled to no special weight. ECF No. 17 at 19. In the Magistrate Judge's view, any error in ALJ Martin's reliance on Dr. Sherbondy's lack of SSA program knowledge was harmless error because the opinion was entitled to no special weight irrespective of the alleged error. *Id.*

Plaintiff objects to the Magistrate Judge's conclusion ALJ Martin properly weighed Dr. Sherbondy's May 2014 opinion. She posits ALJ Martin's erroneous finding concerning Dr. Sherbondy's lack of SSA program knowledge is not harmless error. ECF No. 19 at 2.

The issue of whether a claimant is able to work is reserved to the Commissioner. *See, e.g.*, *Ellis*, 392 F.3d at 994; *Morgan*, 142 F. App'x. at 722-23; SSR 96-5p, 1996 WL 374183, at *2. As such, ALJ Martin had the discretion to decline to give Dr. Sherbondy's May 2014 opinion controlling weight or special significance. *See, e.g.*, *Ellis*, 392 F.3d at 994; *Morgan*, 142 F. App'x. at 722-23; SSR 96-5p, 1996 WL 374183, at *2. Nevertheless, ALJ Martin was required to apply the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6) to determine the extent to which the opinion was supported by the record. ALJ Martin indicated he considered the opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527, R. at 28, and a thorough review of the record reveals he examined the critical facts relevant to the (c)(2)-(6) factors, as his decision

18

summarizes the medical and non-medical evidence in considerable detail, and he reasonably explains why he found the evidence indicating Plaintiff was not disabled more compelling than the evidence suggesting Plaintiff was disabled.

ALJ Martin noted Dr. Sherbondy was Plaintiff's treating psychiatrist and noted he treated Plaintiff between 2007 and 2017. R. at 25, 30-31. ALJ Martin set forth the specifics of Dr. Sherbondy's treatment relationship, including the results of his numerous examinations and the medications he prescribed Plaintiff. R. at 30-31. ALJ Martin examined, therefore, the (c)(2) and (c)(5) factors. ALJ Martin's discussion of Plaintiff's medical records and other evidence in the record, in particular the careful and detailed descriptions of the entire body of opinion evidence and Plaintiff's symptoms, lengthy treatment history, positive responses to changes in her medications, and daily activities, explicitly relate to factors (c)(3) and (c)(4). R. at 28-34. Touching on these latter two factors as well are ALJ Martin's thorough discussion of Plaintiff's treatment history with her primary care doctor and his discussion of the state agency medical consultants' opinions in 2015. R. at 31, 33. ALJ Martin's consideration of ALJ Peace's decision, wherein ALJ Peace found Plaintiff was not disabled, explicitly relates to the (c)(4) factor. After reviewing all of the evidence in the record, ALJ Martin reasonably concluded Plaintiff was not disabled. The record, therefore, reflects ALJ Martin not only analyzed the crucial elements of the (c)(2)-(6) inquiry in assessing Dr. Sherbondy's May 2014 opinion, but also explained why the evidence Plaintiff was not disabled was more compelling than the evidence suggesting Plaintiff was disabled.

Against this backdrop, Plaintiff suggests ALJ Martin's finding concerning Dr. Sherbondy's lack of SSA program knowledge necessitates a remand. For the sake of Plaintiff's argument, the

court assumes Dr. Sherbondy does not lack SSA program knowledge. But such an assumption is of no help to Plaintiff. This is so because even assuming ALJ Martin erred when he found Dr. Sherbondy lacked SSA program knowledge, any such error is harmless.

Under *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), "an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained." *Id.* at 95. S*ee also Inova Alexandria Hosp. v. Shalala*, 244 F.3d 342, 350 (4th Cir. 2001) (administrative agency must articulate explanation for its action at time of action; neither court nor administrative agency may supply explanation on appeal). As a result, in the case before the court, the *Chenery* doctrine prevents the Commissioner from defending the ALJ's action on a ground the ALJ did not embrace on the face of the ALJ's decision. *Combs v. Weinberger*, 501 F.2d 1361, 1363 n.2 (4th Cir. 1974) (*per curiam*) (applying *Chenery* doctrine in refusing to affirm denial of social security disability benefits on a basis not mentioned in administrative record).

The *Chenery* doctrine has an exception—the harmless-error doctrine–and the Fourth Circuit has applied this exception in social security cases. *See Tanner v. Comm'r of Soc. Sec.*, 602 F. App'x. 95, 101 (4th Cir. 2015) (concluding, in spite of ALJ's error, reversal not warranted where it was "highly unlikely, given the medical evidence of record, that a remand to the agency would change the Commissioner's finding of nondisability"); *Bishop v. Comm'r of Soc. Sec.*, 583 F. App'x. 65, 67 (4th Cir. 2014) (applying the harmless error doctrine in a social security case and stating "even assuming *Chenery* is applicable, any error is reviewed under the harmless error doctrine. Thus, if the decision 'is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time.'") (quoting *Spiva*

20

*v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010)); *Morgan*, 142 F. App'x. at 722-23 (concluding failure to give weight to portion of treating physician's opinion was harmless error in ALJ's RFC determination); *Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004) (acknowledging *Chenery* doctrine as general rule, but holding reversal not required on review of administrative action where alleged error clearly had no bearing on procedure used or substance of administrative decision reached). As applied, the exception holds a court should not remand a disability case if it is highly unlikely a remand to the Commissioner would change his finding of nondisability or if the Commissioner's decision is overwhelmingly supported by the record. *See Tanner*, 602 F. App'x. at 101; *Bishop*, 583 F. App'x. at 67. Understandably, in applying the harmless error exception, courts must take care the exception does not swallow the *Chenery* rule. *See, e.g*, *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (noting, in a social security case, courts should cautiously apply harmless error doctrine in order to avoid running afoul of *Chenery*).

In this case, as noted above, ALJ Martin engaged in a thorough and comprehensive analysis of the record evidence and the critical facts related to the (c)(2)-(6) factors, and his findings concerning Plaintiff's RFC are supported by substantial evidence. There are available jobs in the national economy to which Plaintiff can perform. Given ALJ Martin's thorough review and analysis of the entire body of medical and non-medical evidence, it is highly unlikely a remand to the Commissioner would change his finding of nondisability, especially since his decision is overwhelmingly supported by the record. The case understandably turned on the substance of the medical and non-medical evidence, and the opinions supporting such evidence. Dr. Sherbondy's alleged lack of SSA program knowledge, which the court acknowledges is a factor the Commissioner may consider under (c)(6), clearly played no role in the outcome of the case and,

21

therefore, any error is harmless error. *See Tanner*, 602 F. App'x. at 101; *Bishop*, 583 F. App'x. at 67; *cf. Mascio*, 780 F.3d at 639 (noting ALJ's error of determining claimant's RFC before assessing credibility "would be harmless if he properly analyzed credibility elsewhere").

<u>ii) June 2015 Questionnaire Opinion</u>

In Dr. Sherbondy's 2015 questionnaire opinion to which ALJ Martin accorded significant weight, Dr. Sherbondy noted Plaintiff had a poor ability to relate to others. R. at 415. Elaborating on this poor ability, Dr. Sherbondy explained Plaintiff was "easily overwhelmed by psychological stressors." *Id.* ALJ Martin found these responses "vague" on the question of whether Plaintiff could relate to others and, in any case, noted the responses were inconsistent with the record evidence demonstrating Plaintiff could occasionally interact with coworkers and supervisors. R. at 33. As a result, ALJ Martin found Plaintiff could occasionally interact with coworkers and supervisors. R. at 28.

The Magistrate Judge concluded substantial evidence supported ALJ Martin's finding Plaintiff could occasionally interact with coworkers and supervisors. ECF No. 17 at 21-22. Plaintiff objects, contending substantial evidence does not support the finding she can occasionally interact with coworkers and supervisors because such "finding does not enjoy clear record support when the evidence as a whole is considered." ECF No. 19 at 3.

ALJ Martin's finding Plaintiff had the ability to occasionally interact with coworkers and supervisors is supported by substantial evidence. The court begins its analysis with ALJ Peace's decision to which ALJ Martin accorded "great weight." R. at 32.

After examining the record, including Dr. Sherbondy's opinions from December 2011 through May 2014, which reflected Plaintiff had obvious, but not serious work-related limitations,

ALJ Peace found Plaintiff was able to "respond appropriately to changes in the work setting" and to "ask simple questions and request assistance from peers or supervisors." R. at 141. He also found Plaintiff was "able to work in coordination with or proximity to others without being unduly distracted." *Id.* According to ALJ Peace, not only could Plaintiff occasionally interact with coworkers, but also, she could "follow basic instructions from supervisors and could change appropriately in response to feedback from supervisors." *Id.* Given these findings, ALJ Martin was free to rely on them in conjunction with other evidence suggesting Plaintiff could occasionally work with coworkers and supervisors.

Further support for ALJ Martin's finding Plaintiff could occasionally work with coworkers and supervisors can be found in Dr. Sherbondy's June 2015 questionnaire opinion to which, as noted above, ALJ Martin accorded significant weight. R. at 33. Dr. Sherbondy's June 2015 questionnaire opinion notes Plaintiff is poor at completing complex tasks yet is adequate at completing simple ones. R. at 415. As a result, Plaintiff's RFC limits her to simple, routine, and repetitive tasks. Id. at 28. This limitation in Plaintiff's RFC is consistent with Judge Peace's finding Plaintiff could perform such tasks. R. at 141. This limitation also is consistent with Plaintiff's longitudinal history of employment, daily living activities, and normal mental health evaluations. R. 29-32. Under "Current Mental Status," the questionnaire opinion gives every indication Plaintiff is capable of performing work within the confines of her RFC. R. at 415. Her grooming/hygiene and affect were appropriate. *Id.* She was oriented to time, person, place, and situation, and had a normal thought process. *Id.* Her euthymic mood indicates she was in a state without mood disturbances. *Id.* She had no perceptual distortions and had average cognitive ability. *Id.* Her attention, concentration, and memory were all listed as good. *Id.* All of these

23

observations are consistent with the longitudinal history described above. While it is true Dr. Sherbondy indicated Plaintiff was "easily overwhelmed by psychological stressors," *id.*, Plaintiff's RFC accounted for this limitation by minimizing her interaction with coworkers and supervisors and by eliminating altogether her interaction with the public. *Id.* Such limitations are not only consistent with the limitations found appropriate by ALJ Peace, but also with Plaintiff's aforementioned longitudinal history, including her work history and numerous normal mental health status evaluations, and the state agency medical consultants who opined in 2015, given Plaintiff's difficulties with social interaction, she should be limited to occasional interaction with coworkers and supervisors and have no interaction with the public. R. at 109-10, 126-27.

Notwithstanding the substantial evidence supporting ALJ Martin's finding Plaintiff had the ability to occasionally interact with coworkers and supervisors, she objects, arguing because Dr. Sherbondy's June 2015 questionnaire opinion noted she is "easily overwhelmed by psychological stressors," R. at 415, and because the statement of her coworker indicated while at work in 2017 Plaintiff would get "highly agitated," her eyes would "get 'wild,'" and "she would start crying and zone out," R. at 33 (quoting Statement of Cheryl Spencer, R. at 339), the opinion does not support a finding she was capable of occasionally interacting with coworkers and supervisors. ECF No. 19 at 3. This objection misses the mark. A person who has a poor ability to work with coworkers and supervisors and who is easily overwhelmed by psychological stressors is not necessarily unable to occasionally work with others. Quite the opposite. There is a reasonable possibility such a person can occasionally work with others.

Moreover, the court cannot take issue with ALJ Martin's decision to reject the lay testimony of Plaintiff's coworker on the basis the opinion was inconsistent with the record medical

24

evidence. *See, e.g.*, *Baylis v. Barnhart*, 427 F.3d 1214, 1218 (9th Cir. 2005) ("Inconsistency with medical evidence" is an acceptable reason for discrediting lay testimony). While there is some evidence in the record suggesting Plaintiff had difficulty interacting with others at work, ALJ Martin's finding Plaintiff could occasionally interact with coworkers and supervisors fell within the realm of choice within which adjudicators can go either way without interference by the court. Put another way, ALJ Martin was at liberty to resolve any conflicts in the evidence in favor of the Commissioner. *Radford*, 734 F.3d at 296. Thus, the court agrees with the Magistrate Judge that ALJ Martin's finding Plaintiff had the ability to occasionally interact with coworkers and supervisors is supported by substantial evidence.

### iii) July/August 2017 Opinion

In response to Plaintiff's argument Dr. Sherbondy's July/August 2017 opinion indicating Plaintiff was unable to tolerate ordinary work stressors was entitled to controlling weight, the Magistrate Judge concluded ALJ Martin's reason for declining to give such weight—the opinion was inconsistent "with the record as a whole based on the evidence noted [in the paragraph] above under the prior decision," R. at 33—was supported by substantial evidence. ECF No. 17 at 23. Plaintiff objects to the Magistrate Judge's conclusion, arguing because "[t]here has been no reconciliation of this evidence or explanation supporting [ALJ Martin's] decision to reject a portion of [Dr. Sherbondy's] opinion," substantial evidence does not support the reasons for discounting the opinion. ECF No. 19 at 4.

Substantial evidence supports the weight accorded by ALJ Martin to Dr. Sherbondy's July/August 2017 opinion. As a starting point, ALJ Martin relied on ALJ Peace's finding Plaintiff was limited to simple, routine and repetitive tasks performed in an environment free of fast-paced

production requirements, involving only simple work-related decisions and with few if any workplace changes and no interaction with the public and only occasional interaction with coworkers and supervisors.  R. at 32.  ALJ Martin then noted Plaintiff's psychiatric examinations from 2012 to 2015 showed she: (1) had mostly full affect; (2) had a logical thought process; (3) had appropriate grooming/hygiene; (4) was fully oriented; (5) had good attention, concentration, and memory; (6) had average cognitive ability; (7) denied suicidal thoughts/ideations and hallucinations; and (8) had fair to good appetite, energy, mood, sleep, and speech.  *Id.*  In March 2016, Plaintiff saw Dr. Sherbondy and reported she felt great except the week of her menstrual period when she could not get out of bed and was crying.  *Id.*  In April 2016, she felt better despite losing her job and denied suicidal ideations.  *Id.*  During this time, she had normal speech and behavior, and euthymic affect, and was alert and oriented.  *Id.*  In July 2016, Plaintiff discovered her husband was having affairs with prostitutes, which made her depressed, but she had normal speech, appearance, and behavior at that time.  *Id.*  In October, November, and December 2016, Plaintiff had normal mental status evaluations.  *Id.*  Plaintiff's longitudinal history described in detail above and the opinions of the state agency medical consultants make clear Plaintiff could handle ordinary work stressors and function in the workplace within the limitations specified in her RFC.  Such evidence provided an ample basis for ALJ Martin to accord less than controlling weight to Dr. Sherbondy's July/August 2017 opinion.  The opinion was inconsistent with the substantial body of evidence demonstrating Plaintiff was able to tolerate some stress in the workplace and such stress was not work-preclusive as opined by Dr. Sherbondy.  *Craig*, 76 F.3d at 590.

Once ALJ Martin determined Dr. Sherbondy's July/August 2017 opinion was entitled to less than controlling weight, he was required to apply the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6) to determine the extent to which the opinion was supported by the record. Here, ALJ Martin applied the crucial elements of the (c)(2)-(6) factors, reasonably determining the opinion was not supported by the record because it was inconsistent with the substantial body of evidence indicating Plaintiff could handle ordinary work stressors, while at the same time recognizing Plaintiff's RFC needed to accommodate her difficulty dealing with some stress in the workplace.

ALJ Martin considered the (c)(2) and (c)(5) factors by examining Dr. Sherbondy's extensive treatment relationship with Plaintiff, including the results of his numerous examinations and the medications he prescribed Plaintiff. R. at 25, 30-31. His careful consideration of medical and non-medical evidence in the record, including all of the opinion evidence, relates to factors (c)(3) and (c)(4). R. at 28-34. ALJ Martin's thorough consideration of ALJ Peace's decision explicitly relates to the (c)(4) factor. After reviewing all of the evidence in the record, ALJ Martin reasonably concluded Plaintiff could handle ordinary work stressors to the degree outlined in her RFC. The record, therefore, reflects ALJ Martin adequately considered the extent to which Dr. Sherbondy's July/August 2017 was supported by the record. Accordingly, the court concludes substantial evidence supports the weight ALJ Martin accorded Dr. Sherbondy's July/August 2017 opinion.

### Conclusion

A proper RFC analysis, according to the Fourth Circuit, "has three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311

(4th Cir. 2019).  In this case, ALJ Martin considered all the evidence in the record and gave a logical explanation supporting his RFC conclusion, most importantly explaining why he credited some record evidence over other record evidence.  The court's role is not to substitute its judgment for that of the Commissioner and to choose one set of competing evidence over the other set. *Meyer v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011).  Rather, it is the Commissioner's role to resolve conflicts in the evidence.  *Radford*, 734 F.3d at 296.  Having undertaken a thorough review of the record, the court concludes the Commissioner's decision is supported by substantial evidence. Accordingly, the court adopts the Report of the Magistrate Judge and affirms the decision of the Commissioner.

      **IT IS SO ORDERED**.

s/Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
August 31, 2020